McCUTCHEON AND BURR, INC. *v.* WILLIAM W. BERMAN ET AL.
(14113)
(14114)

SHEA, CALLAHAN, COVELLO, BORDEN and MENT, Js.

Argued January 11—decision released May 7, 1991

*Richard P. Weinstein,* for the appellants in the first case, appellees in the second case (defendants).

*Richard W. Tomc,* with whom was *John H. Hanks,* for the appellee in the first case, appellant in the second case (plaintiff).

CALLAHAN, J. These two appeals arise from an action to recover a real estate commission. The defendants appeal from the denial of their motion to dissolve a prejudgment attachment of real estate, while the plaintiff appeals from the granting of the defendants' motion to dismiss. The principal issue in both appeals is whether a real estate listing agreement satisfied the requirements of General Statutes § 20-325a (b).[1] We conclude that those requirements were not satisfied.

The material facts are not in dispute. The plaintiff, McCutcheon and Burr, Inc., is a licensed real estate broker. On or about October 3, 1989, the plaintiff entered into an open listing agreement to sell certain

---

[1] General Statutes § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."

real property, known as the Cromwell West Office Park, the record owners of which were the defendants William W. Berman, Edward Silverman and Loreto G. Marocchini. The defendant Washington Ridge Associates is a Connecticut partnership whose general partners are Berman, Silverman and Marocchini.[2] On the bottom of the listing agreement next to the preprinted term "OWNER(S)" appears the typed name "WASHINGTON RIDGE ASSOCIATES, PTNSHP." Under this name is the signature of Berman, and typed below his signature is "WILLIAM BERMAN, PARTNER" and a post office box address.

On October 10, 1989, Anchor Companies (Anchor) addressed a letter of intent to the plaintiff broker setting forth its proposal to purchase the property in question for $3,950,000. The letter was signed by Berman on October 11, 1989, indicating his assent to enter into negotiations to draw up a purchase contract at that price. On October 24, 1989, the defendants and Anchor executed a purchase contract that identified Berman, Silverman and Marocchini as the sellers of the property. The contract was signed by each of the sellers and listed a post office box as their address.[3] The contract was contingent upon Anchor obtaining financing under certain stated terms. Anchor subsequently requested the return of its deposit when it was unable to obtain financing according to those terms. In its complaint the plaintiff claimed that the reason the sale did not go through was its refusal to acquiesce in the defendants' alleged request that it compromise its commission.

---

[2] On August 30, 1979, the three individual defendants filed a certificate of adoption of trade name in which they indicated that they were transacting business under the name of Washington Ridge Associates. The deed to Cromwell West Office Park does not refer to the partnership but simply conveyed the property to the three defendants as tenants in common.

[3] The purchase contract did not refer to Washington Ridge Associates.

The plaintiff brought this action in three counts: (1) a breach of contract claim on the basis of its alleged right to a commission under the listing agreement; (2) a claim for the value of its services under the theory of quantum meruit; and (3) a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On January 23, 1990, the trial court, *R. O'Connell, J.*, granted the plaintiff's application for a prejudgment attachment of real estate owned by the defendants. On February 13, 1990, the defendants filed a motion to dissolve the prejudgment attachment pursuant to General Statutes § 52-278e.[4] After a hearing, the trial court, *Hon. Harry W. Edelberg,*

---

[4] General Statutes § 52-278e provides in pertinent part: "ALLOWANCE OF PREJUDGMENT REMEDY WITHOUT HEARING. NOTICE TO DEFENDANT. SUBSEQUENT HEARING AND ORDER. ATTACHMENT OF REAL PROPERTY OF MUNICIPAL OFFICERS. (a) The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing . . . upon verification by oath of the plaintiff or of some competent affiant, that there is probable cause to sustain the validity of the plaintiff's claim and (1) that the prejudgment remedy requested is for an attachment of real property . . . .

\* \* \*

"(c) The defendant appearing in such action may move to dissolve or modify the prejudgment remedy granted pursuant to this section . . . . If the court determines at such hearing requested by the defendant that there is probable cause to sustain the validity of the plaintiff's claim, then the prejudgment remedy granted shall remain in effect."

Although the defendants' motion did not state whether it was brought pursuant to General Statutes § 52-278e or General Statutes § 52-278k, the fact that this motion was filed shortly after the attachment leads us to conclude that it was brought under § 52-278e. *Gibbs* v. *Mase,* 11 Conn. App. 289, 293–94, 526 A.2d 7 (1987), citing *City National Bank* v. *Davis,* 181 Conn. 42, 45–46, 434 A.2d 310 (1980).

In *Pinsky* v. *Duncan,* 898 F.2d 852, 854 (2d Cir.), modified, 907 F.2d 17 (2d Cir.), cert. granted sub nom. *Connecticut* v. *Doehr,* U.S. , 111 S. Ct. 42, 112 L. Ed. 2d 18 (1990), the Court of Appeals for the Second Circuit held that the ex parte attachment of real estate pursuant to § 52-278e violated the due process clause. Because that decision applies only to attachments filed after March 9, 1990; id., 907 F.2d 17; it does not apply to this case.

state trial referee, denied that motion. The court concluded that although the listing agreement did not include the names, addresses or signatures of Silverman and Marocchini, the requirements of § 20-325a (b) were satisfied because Berman had signed the agreement on behalf of the partnership. The court reasoned that a strict interpretation of § 20-325a (b) would conflict with the provisions of General Statutes § 34-47[5] concerning the authority of a partner to bind the partnership. The defendants subsequently filed a motion to dismiss pursuant to Practice Book § 142,[6] and the trial court, *Higgins, J.,* granted the motion on the ground that the court lacked subject matter jurisdiction. In so doing, the trial court concluded that Berman's signature alone did not satisfy § 20-325a (b)

---

[5] "[General Statutes] Sec. 34-47. ACTIONS OF PARTNERS. (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

"(3) Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to: (a) Assign the partnership property in trust for creditors or on the assignee's promise to pay the debts of the partnership, (b) dispose of the good will of the business, (c) do any other act which would make it impossible to carry on the ordinary business of a partnership, (d) confess a judgment, (e) submit a partnership claim or liability to arbitration or reference.

"(4) No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction."

[6] "[Practice Book] Sec. 142. MOTION TO DISMISS

"Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. Except in summary process matters, the motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion, unless the court otherwise directs."

because title to the property was in the names of the three individual sellers, rather than in the name of the partnership. The court concluded that § 20-325a (b) required the names, addresses and signatures of Silverman and Marocchini to be included in the listing agreement in order for it to be binding. Both parties filed an appeal in the Appellate Court, and that court granted the plaintiff's motion to consolidate the appeals. We transferred the cases to ourselves pursuant to Practice Book § 4023.

In the first appeal, Docket No. 14113, the defendants challenge the denial of their motion to dissolve the prejudgment attachment.[7] In the second appeal, Docket No. 14114, the plaintiff claims that the trial court improperly granted the defendants' motion to dismiss. We conclude that the plaintiff's cause of action was properly dismissed, although we reach our conclusion by a different procedural route than that traveled by the trial court.

In its challenge to the dismissal of the complaint (Docket No. 14114), the plaintiff asserts that: (1) the trial court incorrectly concluded that the requirements for an enforceable listing agreement set forth in § 20-325a (b) were not met; (2) under the law of the case, the trial court was bound by the earlier ruling by the state trial referee that the provisions of § 20-325a (b) were satisfied; and (3) even if the trial court was correct in concluding that the listing agreement did not meet the requirements of § 20-325a (b), it should not have dismissed the CUTPA count in the complaint because the plaintiff's CUTPA claim was not subject to those requirements. We find none of these arguments persuasive.

---

[7] The defendants claim that the trial court improperly: (1) concluded that the listing agreement satisfied General Statutes § 20-325a (b); (2) determined that the prospective buyer was ready, willing and able to purchase the property; and (3) admitted hearsay evidence.

## I

The right of a real estate broker to recover a commission is dependent upon whether the listing agreement meets the requirements of § 20-325a (b). *New England Land Co.* v. *DeMarkey,* 213 Conn. 612, 621, 569 A.2d 1098 (1990); *Revere Real Estate, Inc.* v. *Cerato,* 186 Conn. 74, 77, 438 A.2d 1202 (1982). Section 20-325a (b) requires that the listing agreement: "(1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent." In addition, the broker ordinarily must prove that it has found a buyer that is ready, willing and able to purchase the property on terms agreed to by the seller. *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 242, 440 A.2d 306 (1982); *Revere Real Estate, Inc.* v. *Cerato,* supra, 77–78.

The defendants contend that the trial court properly concluded that "owner," as used in § 20-325a (b), means "record owner" and that the listing agreement is therefore unenforceable because it does not include the names, addresses or signatures of Silverman and Marocchini.[8] The plaintiff argues that when construing the term "owner" in § 20-325a (b), this court must read that statute in light of § 34-47, which states that

---

[8] The defendants also argue that the listing agreement is not in compliance with General Statutes § 20-325a (b) because the agreement is dated October 3, 1989, yet it states that the term of the agreement commences on October 1, 1989. Because we agree with the defendants' principal argument, we need not address this issue.

"[e]very partner is an agent of the partnership for the purpose of its business." The plaintiff asserts, therefore, that the signature of Berman under the name of the partnership on the listing agreement was sufficient to meet the requirements of § 20-325a (b). In the alternative, the plaintiff argues that it has satisfied the requirements of § 20-325a (b) if the listing agreement, trade name certificate, letter of intent from Anchor Companies, purchase contract and parol evidence are considered together. We disagree with the plaintiff.

It is well established that the requirements of § 20-325a (b) are mandatory rather than permissive and that the statute is to be strictly construed. *New England Land Co.* v. *DeMarkey,* supra, 623 (listing agreement must include sale price of property); *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 54, 453 A.2d 771 (1983) (listing agreement lacking addresses of both parties unenforceable); *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230–31, 439 A.2d 946 (1981) (brokerage contract signed by owner's agent unenforceable under the statute as then worded); *Hossan* v. *Hudiakoff,* 178 Conn. 381, 383, 423 A.2d 108 (1979) (failure to include broker's address fatal to listing agreement); *Rostenberg-Doern Co.* v. *Weiner,* 17 Conn. App. 294, 305–307, 552 A.2d 827 (1989) (omission of rate of broker's commission fatal); *Howland* v. *Schweir,* 7 Conn. App. 709, 713–15, 510 A.2d 215 (1986) (commission not recoverable where broker could not prove he produced a buyer during effective term of listing agreement); *Arruda Realty, Inc.* v. *Doyon,* 35 Conn. Sup. 617, 620, 401 A.2d 625, cert. denied, 176 Conn. 763, 394 A.2d 201 (1978) (owner's address requirement not satisfied even though the listing agreement included the address of the subject property, which was the same as the owner's address). "A broker who does not follow the mandate of [§ 20-325a (b)] does so at his peril." *Thornton Real Estate, Inc.* v. *Lobdell,* supra, 230–31.

The plaintiff first claims that the requirements of § 20-325a (b) were satisfied because Berman ostensibly signed the listing agreement on behalf of the partnership. The dispositive issue concerning this claim is whether the purported partnership signature satisfies the statute or whether, as the defendants assert, the term "owner" in § 20-325a (b) means "record owner." As previously noted, the record title to Cromwell West Office Park was vested in Berman, Silverman and Marocchini, and nowhere does the deed by which they took title refer to their partnership.[9]

The plaintiff contends that "owner" should not be interpreted to mean "record owner" because § 20-325a (b) should be read in conjunction with § 34-47. In other words, the plaintiff asserts that Berman had the authority to bind the partnership under § 34-47 and that his signature, appearing as it did below the name of the partnership, obviated the need for including the names, addresses and signatures of the other two record owners on the listing agreement. The plaintiff's argument, however, ignores the principle that "[a] statutory provision that articulates with greater specificity the resolution of a particular controversy is presumed to prevail over a more general provision." *State v. Daniels,* 207 Conn. 374, 393, 542 A.2d 306 (1988); *State v. Torres,* 206 Conn. 346, 359, 538 A.2d 185 (1988); *McKinley v. Musshorn,* 185 Conn. 616, 623–24, 441 A.2d 600 (1981). Section 34-47 is a general provision that governs the authority of partners to bind the partnership when carrying on the partnership business. Section 20-325a (b), however, includes specific provisions that dictate when the signature of an owner's

[9] Under General Statutes § 34-48, title to property can be held in the name of a partnership. Although title to Cromwell West Office Park was not in the name of Washington Ridge Associates, the record is unclear as to whether the property was in fact an asset of the partnership. This factual issue, however, has no effect on our decision.

agent satisfies the requirements of the statute. Under those provisions the agent must be authorized to act on behalf of the owner pursuant to "a written document executed in the manner provided for conveyances in section 47-5."[10] General Statutes § 20-325a (b). It is clear that Berman did not sign the listing agreement as an agent for Silverman or Marocchini as provided for in § 20-325a (b).[11]

We conclude that "owner," as used in § 20-325a (b), means the record owner or owners as displayed on the land records. The listing agreement in issue, therefore, is not in compliance with the statute because the names, addresses and signatures of Silverman and Marocchini, both record owners, were omitted. Although we might reach a different result if title to the property had been held in the name of the partnership, under the facts of this case we cannot apply the general provisions of § 34-47 when the legislature has specifically addressed in § 20-325a (b) the conditions under which an agent will be allowed to sign a listing agreement on behalf of an owner.[12]

---

[10] General Statutes § 47-5 provides in pertinent part: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands."

[11] On January 11, 1990, Marocchini appointed Berman as his attorney in fact. That appointment, however, was made well after the execution of the listing agreement in October, 1989.

[12] We also find support for our conclusion in the legislative history of General Statutes § 20-325a (b). The term "owner" did not appear until 1985 when the statute was amended by replacing the word "seller" with the term "owner." See Public Acts 1985, No. 85-166, § 1.

The purpose of this change in terminology was to clarify whose signature was required on the listing agreement, especially in cases where the

The plaintiff next claims that even if we construe "owner" to mean "record owner," it has satisfied the requirements of § 20-325a (b) if the listing agreement, trade name certificate, letter of intent, purchase contract and parol evidence are considered together. The plaintiff relies in particular on the fact that the purchase contract includes a provision concerning the brokerage fee.[13] "[S]eparate documents will be deemed to constitute a valid contract under § 20-325a (b) if they collectively satisfy the statutory requirements *and relate to the same agreement. [Good* v. *Paine Furniture Co.,* 35 Conn. Sup. 24, 27, 391 A.2d 741 (1978)]. It is not within the power of courts to create new and different agreements. *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 375, 321 A.2d 444 (1973)." (Emphasis in original.) *Jay Realty, Inc.* v. *Ahearn Development Corporation,* supra, 55. The burden of establishing a valid listing agreement in this manner "is great, however, and must consist of more than a reference to the [listing] contract in the sales agreement." *Del Greco Realty Co.* v. *Lamoureux,* 39 Conn. Sup. 95, 97–98, 469 A.2d 1232 (1983). "Parol evidence will be considered if it con-

broker was performing services unrelated to the sale of property, such as locating tenants for owners of rental properties. 28 S. Proc., Pt. 5, 1985 Sess., p. 1557; 28 H.R. Proc., Pt. 7, 1985 Sess., p. 2196; 28 H.R. Proc., Pt. 10, 1985 Sess., p. 3696; Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1985 Sess., pp. 70–71, 91. Although the legislative history does not address specifically the issue in the present case, it is clear that the overarching purpose of the amendment was to clarify the statutory language in order to make the statute effective and workable. Conn. Joint Standing Committee Hearings, supra. Interpreting the word "owner" to mean "record owner" advances this purpose because a broker can determine who must sign a listing agreement through the simple expedient of examining the land records.

[13] The purchase contract provides in pertinent part: *"Brokerage.* Purchaser and Seller represent to each other that they have dealt with no real estate broker, agent or finder, other than McCutcheon & Burr, Incorporated, in connection with this transaction and each agrees to indemnify and hold the other harmless from claims arising from its actions. At Closing, Seller shall pay any fee due to McCutcheon & Burr, Incorporated."

vincingly shows that the signed and unsigned writings are connected to one another and have been assented to by the parties." *Good* v. *Paine Furniture Co.*, supra, 27.

The focus of our inquiry on this issue, therefore, is whether either the listing agreement or the purchase contract "points *unquestionably* to the other document so as to create a consistent contract."[14] (Emphasis added.) *Jay Realty, Inc.* v. *Ahearn Development Corporation,* supra, 56; *Rostenberg-Doern Co.* v. *Weiner,* supra, 306. The plaintiff is unable to satisfy this strict standard. The only reference in the listing agreement to a purchase contract is a provision stating that the broker will not earn a commission if the owner enters into a purchase contract with a buyer procured by the owner. The clause in the purchase contract concerning brokerage makes no mention whatsoever of the listing agreement. Nor does the purchase contract provide any indication of the rate of commission or when a commission would be deemed earned. Finally, the parol evidence offered by the plaintiff does not establish the necessary linkage between the two documents. We conclude, therefore, that the plaintiff's attempt to combine these two documents for the purpose of satisfying the requirements of § 20-325a (b) is unavailing.

The plaintiff also argues that because the state trial referee had concluded that § 20-325a (b) was satisfied when it denied the defendants' motion to dissolve the prejudgment attachment, the subsequent granting by the trial court of the motion to dismiss on the ground

---

[14] Although the plaintiff also relies upon the letter of intent, that document does not contain the names, addresses or signatures of Silverman and Marocchini and therefore would not meet the statutory requirements if read together with the listing agreement. The trade name certificate is signed by all three partners, but it clearly does not have the requisite connection to the listing agreement.

that the plaintiff had not complied with that statute violated the principle of the law of the case. The defendants contend that the law of the case is not applicable here because a trial court ruling on a motion to dissolve a prejudgment remedy employs a different legal standard than a trial court deciding a motion to dismiss. We agree.

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478. In essence it expresses the practice of judges generally to refuse to reopen *what has been decided* and is not a limitation on their power. *Messenger* v. *Anderson,* 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912)." (Emphasis added.) *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982); *Daley* v. *Hartford,* 215 Conn. 14, 29, 574 A.2d 194, cert. denied, U.S. , 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990); *Rosenblit* v. *Danaher,* 206 Conn. 125, 132, 537 A.2d 145 (1988). "From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling." *Breen* v. *Phelps,* supra, 100.

When a defendant moves to dissolve an ex parte prejudgment remedy, the trial court must determine whether "there is probable cause to sustain the validity of the plaintiff's claim." General Statutes § 52-278e (c). It is well established that a probable cause hearing is not intended to be a full scale trial on the merits of the plaintiff's claim. *New England Land Co.* v. *DeMarkey,* supra, 620; *Three S Development Co.* v. *Santore,* 193 Conn. 174, 175, 474 A.2d 795 (1984); *Augeri* v. *C.F. Wooding Co.,* 173 Conn. 426, 429, 378

A.2d 538 (1977). The court's role in such a hearing is to determine the probability of success by evaluating the arguments and evidence presented by both parties, and its ruling is not intended to be a final resolution on the merits. *Augeri* v. *C.F. Wooding Co.*, supra. This limited weighing process applies to both factual and legal issues. Id.; *Babiarz* v. *Hartford Special, Inc.*, 2 Conn. App. 388, 393, 480 A.2d 561 (1984).

In contrast, the ruling of the trial court on the motion to dismiss necessitated a full review of the merits of the underlying issue, namely, whether the listing agreement satisfied the requirements of § 20-325a (b). Because this ruling involved the application of a different legal standard than that employed in ruling on the motion to dissolve the prejudgment attachment, the law of the case is simply inapposite in these circumstances.

It is necessary to note, however, that the proper procedural mechanism for addressing whether § 20-325a (b) was satisfied would have been a motion to strike under Practice Book § 152,[15] rather than a motion to dismiss under Practice Book § 142. See *Kovacs* v. *Kasper,* 41 Conn. Sup. 225, 565 A.2d 18 (1989); *Del Greco Realty Co.* v. *Lamoureux,* supra. The defendants argued, and the trial court agreed, that it lacked subject matter jurisdiction over the plaintiff's claim because the listing agreement did not comply with § 20-325a (b). None of the cases in which we have addressed a failure to comply with § 20-325a (b), however, has involved a motion to dismiss because of a lack of subject matter jurisdiction. See, e.g., *New England Land Co.* v. *DeMarkey,* supra (motion to dissolve prejudgment rem-

---

[15] Practice Book § 152 provides in pertinent part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof."

edy); *Thornton Real Estate, Inc.* v. *Lobdell,* supra (summary judgment); *Hossan* v. *Hudiakoff,* supra (summary judgment). Furthermore, we are unaware of any cases in which the failure of a listing agreement to satisfy the requirements of § 20-325a (b) was found to create a jurisdictional bar to an action based on that agreement.[16] An action to enforce a listing agreement is essentially a breach of contract claim, and the trial court clearly had subject matter jurisdiction over such a claim. See Conn. Const., amend. XX; *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 127, 32 A.2d 547 (1943); see generally *Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 423–25, 559 A.2d 1103 (1989). We therefore conclude that a motion to strike was the proper means to abate the plaintiff's action. See *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 372, 439 A.2d 396 (1981).

Although the trial court should have treated the motion to dismiss as a motion to strike, this procedural anomaly does not affect our decision. In another case involving an issue of compliance with § 20-325a (b), we noted that "where the pleadings and exhibits are the only evidentiary concerns, the dictates of judicial economy instruct us to resolve the legal validity of a particular agreement under an applicable statute at the earliest time practicable." *New England Land Co.* v. *DeMarkey,* supra, 623. For the purposes of the present case, the primary difference between the granting of

---

[16] In asserting that a failure to comply with General Statutes § 20-325a (b) creates a jurisdictional problem, the defendants rely primarily on the portion of the statute that provides: "No person . . . shall commence or bring any action . . . ." We note that similar language is found in the statute of frauds; General Statutes § 52-550; and in the statute of limitations for tort actions set forth in General Statutes § 52-577. Neither of those statutes creates a jurisdictional bar. See *Seipold* v. *Gibbud,* 110 Conn. 392, 395, 148 A. 328 (1930) (statute of frauds); *Orticelli* v. *Powers,* 197 Conn. 9, 15–16, 495 A.2d 1023 (1985) (§ 52-577).

a motion to dismiss for lack of subject matter jurisdiction and the granting of a motion to strike is that only in the latter case does the plaintiff have the opportunity to amend its complaint. See Practice Book § 157.[17] The ability to amend after a motion to strike would be unavailing to the plaintiff here, however, because the plaintiff was unable to demonstrate that it could add anything to its complaint by way of amendment that would avoid the deficiencies in the original complaint.[18] Therefore, although the defendants' motion to dismiss was procedurally incorrect, the resulting foreclosure of the plaintiff's ability to amend was harmless.

## II

The plaintiff further contends that, even if the trial court properly concluded that the listing agreement did not satisfy § 20-325a (b), its CUTPA count should not have been dismissed. In support of this claim the plaintiff relies primarily on *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 525 A.2d 935 (1987). That case, however, is readily distinguishable.

The plaintiff in *Dow,* a real estate brokerage corporation, was serving as co-broker for the sale of property owned by a limited partnership. Id., 476–77. The named defendant was both a general partner in the limited partnership and the owner of the defendant corporation, a real estate brokerage company that served as primary broker for the property. Id. After the plain-

---

[17] "[Practice Book] Sec. 157. ——SUBSTITUTE PLEADING; JUDGMENT

"Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

[18] The plaintiff was also unable to demonstrate that it could save the CUTPA count if it had the opportunity to amend that count.

tiff had found a buyer, the named defendant induced the limited partnership to enter into a purchase agreement with a different party under terms that benefited the named defendant and his brokerage company. Id., 477. The plaintiff filed, inter alia, a CUTPA claim, and we concluded that the trial court reasonably could have found probable cause to believe that the plaintiff had a valid cause of action under CUTPA. Id., 481–84.

The plaintiff's reliance on *Dow* is misplaced, however, because the CUTPA claim in *Dow,* unlike the CUTPA count in the present case, did not arise solely from the listing agreement. We specifically noted in that case that the CUTPA claim was not brought simply as a means of enforcing its listing agreement, but rather was an attempt by the plaintiff to recover for the deceptive practices of the defendants. Id., 483–84. In contrast, in this case the plaintiff's CUTPA claim simply states an alternative means for attempting to collect the commission provided for in the listing agreement.[19]

In further support of its CUTPA claim, the plaintiff argues that even if it was not entitled to collect a commission as a result of the deficiencies of the listing agreement, the defendants' refusal to pay a commission constituted a CUTPA violation because it was equitably entitled to that commission. Assuming, as the plaintiff contends, that it did in fact produce a ready, willing and able buyer and that the defendants asked the plaintiff to compromise its commission as a condition for going through with the sale, we do not agree that such conduct would provide a basis for a CUTPA

[19] The first nine paragraphs of the CUTPA count incorporate by reference the entire first count, which represents the claim for breach of the listing agreement. The remainder of the CUTPA count alleges that the defendants engaged in unfair or deceptive acts when they allegedly refused to sell the Cromwell West Office Park for the agreed price because the plaintiff would not compromise all or part of its commission.

violation. Because the listing agreement did not comply with § 20-325a (b), the defendants were legally entitled to refuse to pay a commission and their reliance on the statute cannot translate into a CUTPA violation.

The plaintiff's invocation of equitable principles in support of its CUTPA claim is an attempt to effect an end run around the requirements of § 20-325a (b). "Listing contracts are governed exclusively by § 20-325a . . . ." *William Pitt, Inc.* v. *Taylor,* 186 Conn. 82, 84, 438 A.2d 1206 (1982). In *Currie* v. *Marano,* 13 Conn. App. 527, 530–33, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988), the Appellate Court rejected an analogous claim. In that case, a broker whose listing agreement did not satisfy the requirements of § 20-325a (b) argued that he was still entitled to his commission because the defendant was equitably estopped from asserting the statute as a defense and because the defendant had been unjustly enriched. Id., 530–32. The court noted that to allow the plaintiff to recover under these theories "would nullify § 20-325a and emasculate the state's real estate sales licensing system." Id., 531; see also *Barrett Builders* v. *Miller,* 215 Conn. 316, 331–32, 576 A.2d 455 (1990) (*Shea, J.,* dissenting); *Goldblatt Associates* v. *Panda,* 24 Conn. App. 250, 253–54, 587 A.2d 433 (1991) (broker precluded from recovering in quantum meruit when listing agreement did not satisfy § 20-325a [b]). The plaintiff's attempt to circumvent the requirements of § 20-325a (b) by filing a CUTPA claim must therefore be denied.

In light of our conclusion that the trial court properly dismissed the complaint, the issues in the defendants' appeal of the denial of their motion to dissolve the prejudgment attachment in Docket No. 14113 need not be addressed.

The judgment in Docket No. 14114 is affirmed; the appeal in Docket No. 14113 is dismissed and the case is remanded to the trial court with direction to order the release of the plaintiff's prejudgment attachment.

In this opinion the other justices concurred.