[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Lynwood Agency is a licensed real estate brokerage agency. On September 28, 1992, Lynwood entered into an agreement with Dennis and Alice Nolan under which Lynwood agreed to seek a ready, willing and able buyer for the defendants' Meriden home. The agreement, which was later extended to July 31, 1993, entitled Lynwood to a commission if during the term of the agreement it found a ready, willing, CT Page 8230-A and able buyer for the listed price or on other terms acceptable to the sellers. During the initial six-month term of the listing contract, the listing price was $178,900. When the listing contract was extended to July 31, 1993, the listing price was reduced to $169,900. No offers acceptable under the agreement were presented to the Nolans prior to July 31, 1993.
On July 30, 1993, Dennis Nolan informed Barbara Cornell of the Lynwood Agency that he did not intend to renew the listing agreement after its expiration of July 31, 1993. Nolan informed Cornell that he intended to market the property himself at a price of $159,900 when the listing agreement expired. He also informed her that he was advertising the property for sale in the local paper on August 1, 1993.
On July 31, 1993, Kevin Bonaiuto informed prospective buyers David and Lisa Fahey that the Nolans' asking price under the listing agreement had been reduced to $159,900. All parties agree that this statement was incorrect. Nonetheless, on the basis of this incorrect quote of the listing price, Bonaiuto arranged for an inspection of the home in the late afternoon of July 31, 1993. CT Page 8230-B Later that evening the Faheys made a written offer of $148,000. Dennis Nolan was informed that the offer was forthcoming by Lynwood Bonaiuto by phone at approximately 9 p.m. Nolan responded that he would only be interested in an offer at the listing price of $169,900 and that if the purported offer was less than that amount the Nolans were not interested. Bonaiuto did not tell Nolan of the amount of the offer during the phone conversation but insisted on coming to Nolan's home which he did sometime after 9 p.m. on July 31, 1993.
At the hearing, the Faheys testified that they would not have inspected the property if they knew the asking price was $169,900. Nolan refused the Faheys' offer, and they subsequently refused his counteroffer of $168,900. Negotiations terminated at that time. Subsequently, on August 5, 1993, after the listing agreement had expired, the Faheys agreed to purchase the property from the Nolans for $155,500.
The plaintiff Lynwood Agency now seeks a prejudgment remedy based upon the claim that it is entitled to a commission under the terms of the listing agreement. CT Page 8230-C
"The right of a real estate broker to recover a commission is dependent upon whether the listing agreement meets the requirements of 20-325a (b)." McCutcheon and Burr, Inc. v. Berman,218 Conn. 512, 519 (1991). "Section 20-325a (b)requires that the listing agreement: `(1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) signed by the owner or an agent authorized to act on behalf of the owner . . . .'" Id. quoting Conn. Gen. Stat. 20-325a (b). "In addition, the broker ordinarily must prove that it has found a buyer who is ready, willing and able to purchase the property on terms agreed to by the seller." Berman, 218 Conn. at 519. "The requirements of General Statutes 20-325a are strictly applied to listing agreements and their terms are likewise strictly construed." Ditchkus Real Estate Co. v. Storm, 25 Conn. App. 51, 55-56 (1991).
During the term of the listing agreement, the plaintiff failed to produce a ready, willing and able buyer at the listing price or a price acceptable to the defendants. The Faheys did not agree to CT Page 8230-D pay the full listing price and their offer of $148,000 was not acceptable to the Nolans. Moreover, while the listing agreement was in effect defendant Dennis Nolan made it clear that he did not want to entertain offers below the listing price.
In Ditchkus Real Estate Co., the plaintiff agent "produced a buyer who was not ready or willing to purchase defendant's property unless a certain contingency was fulfilled." Id. at 55. Subsequent to the termination of the listing agreement, the property was sold without contingencies to the party that the agent had introduced to the seller. Id. at 53. The Ditchkus court held that the real estate broker could not recover a commission because the broker "failed to produce a buyer ready, willing and able to enter into a valid sales contract during the time period when a valid listing agreement was in effect. Id. at 56.
In Riverside-Shavell Realty, Inc. v. Beverly Ellsby, Inc.,9 Conn. L. Rptr. No. 10, 298 (1993), a prejudgment remedy was denied when a broker brought a party to a seller, but the party did not purchase the property until the listing agreement had expired. Id. at 298-299. The court noted that when a real estate broker CT Page 8230-E brings an action based on a listing agreement, the broker must show that the agreement satisfies the requirements of 20-325a(b). Id. at 299. Subsection four of this statute provides that the listing agreement must "contain the conditions of such contract or authorization." Conn. Gen. Stat. 20-325a(b); Beverly Ellsby, Inc., 9 Conn. L. Rptr. at 299. Since the time for performance was absent from the agreement, the agreement was unenforceable. Beverly Ellsby, Inc., 9 Conn. L. Rptr. at 299.
Similarly, in the instant case, the broker did not produce a buyer who was ready, willing and able to buy at the listing price. Also, the broker failed to produce a ready, willing and able buyer who would purchase at a price acceptable to the seller during the term of the listing agreement. The seller had clearly stated that he would only accept referrals from the agency if the prospective purchaser would buy at $169,900. Moreover, the seller had notified the agency prior to termination of the agreement that he intended to market the property himself at a price of $159,900 once the agreement expired. Therefore, the eventual sale of the house by the seller for $155,000 was a reasonable product of his negotiations with the buyer. There is no evidence that the sale for CT Page 8230-F $155,000, after termination of the listing agreement, was done in bad faith to avoid the obligations under the listing agreement.
Since the sale occurred after the termination of the listing agreement, it did not comply with the conditions of the contract. Therefore, the plaintiff cannot recover. Simply bringing the parties together is not sufficient to justify a commission if the listing contract has not been complied with or has expired at the time of the sale. Id. at 298-99; Ditchkus Real Estate Co.,25 Conn. App. at 56. Cases holding to the contrary, such as Walsh v. Turlick,164 Conn. 75 (1972), are based on events which pre-date the enactment of General Statutes 20-325a controlling listing agreements and such cases are therefore inapplicable to the instant case.
Accordingly, the motion for a prejudgment remedy should be denied.
Dorsey, STATE TRIAL REFEREE CT Page 8230-G