[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After a review of the pleadings in the present case, wherein a pre-judgment remedy in the amount of $500,000 is sought, this court concludes that the plaintiff has sustained its burden of proving probable cause as to the first count only.
The evidence presented to the court supports a finding in the present PJR hearing that the plaintiff, Randall E. Dunham ("Dunham"), who had previously been the principal independent Certified Public Accountant (CPA) advising the Kane Brick Company, left private practice to join the Brick Company as its Chief Financial Officer in 1986. He also became one of its directors. Dunham was hired with a five-year employment commitment to attempt to get the company back on solid financial footing.
In his capacity as Chief Financial Officer, Dunham made, and the company accepted, his recommendation to hire Peat Marwick, a large public accounting firm, to handle the accounting matters of the company. Dunham dealt directly with a person in that firm who was a personal friend.
The corporation converted from a "C" corporation to an "S" corporation. The details of this conversion are not known by this CT Page 6360 court, as no evidence was offered in that regard.
In 1988, two years after coming on board, Dunham concluded that bankruptcy was imminent unless the business was sold. Certain source of financial support was no longer available. Elizabeth Kane Cook, who had lent money in the past, was no longer willing nor able to lend. There was an affirmative effort to sell the business, and Dunham undertook the task of conducting the search for a buyer and negotiating the sale. All of the directors and officers knew that Dunham was actively seeking a buyer for the business.
At some point inquiry was made of Dunham regarding the tax liability of the directors upon the sale of the business. However, the evidence diverges at this point. There is evidence that Dunham responded that he did not know the answer, but that he would ask the accountants at Peat Marwick. Dunham never received an answer because the Peat Marwick employee who was handling the matter was apparently unavailable. The deal closed without the advice.
The opposing evidence was that Dunham advised the directors that there would be very little, if any, tax liability up front as a result of the sale.
On June 30, 1989, the Company, pursuant to a plan, sold substantially all of its assets to Philip Armetta for a total of $4 million. Under the terms of the plan, $1.9 million was paid at closing, and the remaining $2.1 million was to be paid in five years pursuant to a promissory note.
Dunham did not have check writing authority, and thus prepared checks only with the consent of the other directors. At the time of the closing, checks were issued to the Internal Revenue Service and various secured and unsecured creditors. Mrs. Cook, an unsecured creditor and mother of the defendant Gregory Cook, was paid $358,000, which she claims was adequate to repay her loan to the company. There is a note evidencing the same. The further sum of $140,000 was paid to one of the defendants Robert Woodman, for some or all of the following reasons: to buy out an option; to compensate him for past services; legal advice; and/or arranging a loan. There was evidence that other individual stockholders and/or directors were paid various sums between $25,000 and $50,000. No checks were introduced to show the amount, and no evidence was offered to show who signed the checks. Furthermore, no corporate authorization was offered to support how and why the sums were CT Page 6361 paid, and no disbursement sheets or checkbook stubs were offered. The only evidence that this court heard regarding disbursements was that sums were paid.
There was testimony that a parallel action, The Michael KaneBrick Co., et al. v. Dunham Peat Marwick, D.N. CV-91-0061497S, was bought by the four defendants in this action against Dunham and Peat Marwick, claiming over $500,000 in damages for losses resulting from the conversion in business form to "S" corporation status, and for losses resulting from the structure of the sale of the corporation's assets. The plaintiffs in that action claim that the change to "S" Corporation status imposed greater tax liability on various individuals, and that Dunham, in structuring the sale of the company's assets, did not hold back sufficient funds to pay tax liabilities. The evidence in the present hearing did not disclose which individuals are liable for the tax and to what extent.
In a hearing in probable cause for the issuance of a prejudgment remedy, the trial court must, by weighing the probabilities, determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. See Bank of Boston Connecticut v.Schlesinger, 220 Conn. 152, 156, 595 A.2d 872 (1991). Similarly, when a defendant moves to dissolve an ex parte prejudgment remedy the trial court must determine whether there is probable cause to sustain the validity of the plaintiff's claim. McCutcheon Burr,Inc. v. Berman, 218 Conn. 512, 525, 590 A.2d 438 (1991), quoting General Statutes § 52-278e(c). This limited weighing process, which is not intended to be a final resolution on the merits, applies to both legal and factual issues. Id. The court has broad discretion in this determination, and will not be overruled in the absence of clear error. See New England Land Co., Ltd. v.DeMarkey, 213 Conn. 612, 620, 569 A.2d 1098 (1990).
The Business Judgment Rule, codified in General Statutes § 33-313
(d), provides in part:
 A director shall perform his duties as a director . . . in good faith, in a manner he reasonably believes to be in the best interest of the corporation and with such care as an ordinary prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, prepared CT Page 6362 or presented by . . . (2) counsel, public accountants or other persons as to matters which the director reasonably believes to be within such persons professional or expert competence.
Good faith in the absence of self-dealing are threshold requirements for invoking the rule. See Samuel S. Cross, Connecticut Corporation Lawand Practice, § 5.10, at 296, quoting Grobow v. Perot,539 A.2d 180 (Del.Sup. 1988). A person who performs his duties in accordance with this rule is presumed to have no liability by reason of being or having been a director of a corporation. See General Statutes § 33-313 (d).
This court concludes that, other than the contested testimony that Dunham advised the directors that there would be very little tax liability as a result of the sale, there was no evidence adduced that would indicate Dunham did anything wrong. The defendant has not cited to, nor is this court aware of, any legal authority holding that a chief financial officer of a corporation has an obligation to advise directors and shareholders regarding there own personal tax liabilities. If such advice was in fact given by Dunham, the evidence supports that it was given only as his opinion.
There was no evidence that Dunham acted in bad faith. Even if he was entirely mistaken in his assessment, this does not make him liable to the directors. Id. His obligation was to the corporation. Therefore, this court concludes that there is no probable cause to support a finding that Dunham will be liable for anything.
Accordingly, he may be entitled to indemnification of costs and expenses incurred in his defense. See General Statutes § 33-320a(c). He testified that he had incurred $30,000 for fees and expenses, and will most likely incur $20,000 more, totaling a final expenditure for attorney fees and expenses at $50,000. Accordingly, the prejudgment remedy security is reduced to $50,000 effective upon proper service and notice.
J. F. Walsh, J. CT Page 6363