[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE THE FEBRUARY 20, 1996 COMPLAINTAND MOTION FOR JUDGMENT OF DELOITTE TOUCHE LLP AND ROBERT V. LALLY
The above-captioned action is one of nineteen class actions pending in this court against Colonial Realty Company and various related entities (Colonial Realty Company and all of its related entities are referred to collectively in this Decision as "Colonial"), the principals of Colonial, Jonathan Googel ("Googel"), Benjamin Sisti ("Sisti") and the Estate of Frank Shuch, professionals who represented Colonial, or were involved CT Page 5261-Q in the sale or financing of the various Colonial limited partnerships and other defendants. The plaintiffs allegedly purchased an interest in the Colonial Constitution Limited Partnership and bring this action on behalf of themselves and all others who also purchased such interests. The plaintiffs in the other eighteen aforementioned class actions allegedly purchased an interest in a Colonial limited partnership and bring those actions on behalf of themselves and others who also purchased such interests. Each class action pertains to a separate Colonial limited partnership. The defendant, Deloitte Touche LP ("Deloitte") is a defendant in the following six class actions, which pertain to the following Colonial limited partnerships: No. 92-0554098S Chiristoforo v. Colonial Healthcare (Colonial Healthcare); No. 92-0518568S Reilly v. Pinkus (Colonial Southbury); No. 91-0554097S Riggi v. Colonial Broadwater
(Colonial Broadwater); No. 92-0505840S Rota v. ColonialRealty/USA (Constitution); No. 91-0554099S Santarsiero v.Colonial Realty (Colonial Capital Center); No. 91-0554096S Stickav. Colonial Realty/USA (Colonial Mesa); and the defendant, Robert V. Lally ("Lally"), is a defendant in only the Rota action.[1]
On February 5, 1996 this court granted Deloitte's Motion to Strike all claims against it in all class actions in which it was a defendant, except the Rota action, and granted said Motion in the Rota action as to all claims against it except the claim alleging violation of § 36-498(c) of the Connecticut General Statutes, a portion of the Connecticut Uniform Securities Act ("CUSA"). The court also granted Lally's Motion to Strike all claims against him in the Rota.
On February 20, 1996 the plaintiffs filed Amended Complaints in all six class actions in which Deloitte is a defendant. Those Complaints contained additional factual allegations and/or legal conclusions concerning Deloitte and Lally. In addition, in an apparent attempt to avoid this court's February 5, 1996 ruling on the statute of limitations under CUSA, the Complaints contained a change in the allegations concerning the date on which the plaintiffs purchased their limited partnership interests. For example, the June 20, 1995 complaint in Rota and all prior complaints in that class action contained the allegation that the plaintiffs "each purchased limited partnership interests in Colonial Constitution Limited Partnership . . . in or about December 1989." The February 20, 1996 Complaint alleges that the plaintiffs purchased their limited partnership interests "in or before June of 1991 when the offering closed on the property." CT Page 5261-R
Deloitte and Lally have moved to strike the February 20, 1996 Complaints for the following reasons:
1) The plaintiffs have had numerous opportunities to make the complaint more specific with respect to the alleged wrongdoing of Deloitte and Lally, but have never done so and it is too late to do so now, only after the court has stricken the complaints for, among other reasons, lack of specificity;
2) The Complaints still do not state a claim against either Deloitte or Lally;
3) The purpose of Practice Book § 157[2] has already been served. That section is supposed to prevent injustice, not cause it.
Those defendants have also moved for judgment on the Motions to Strike previously granted by the court.
Procedural History of Case
On December 27, 1993 Deloitte and Lally were served with amended complaints in the six class actions referred to above. On March 17, 1994 Deloitte and Lally filed Requests to Revise in all six actions in which they requested the plaintiffs to provide, among other things, specifics about services provided by Deloitte to Colonial, the dates of those services, representations made by Deloitte and Lally to investors in the six limited partnerships, and the knowledge of Deloitte and Lally concerning the alleged fraud by Colonial. The plaintiffs did not object to the Requests to Revise.
The plaintiffs filed a request for extension of time in which to file revised pleadings, which was addressed at a hearing on June 17, 1994. At that hearing the plaintiffs' counsel represented that the information sought in the Request to Revise would we provided in the revised complaints.
Thereafter the plaintiffs filed a further request for extension of time in which to file revised complaints and the court granted the extension until January 20, 1995. At a hearing before this court on August 25, 1994 the court ordered the information sought in the Requests to Revise to be plead in the revised complaints. CT Page 5261-S
The January 20, 1995 Revised Complaints contained none of the revisions requested by Deloitte and Lally in the Requests to Revise. Therefore, on March 28, 1995 Deloitte and Lally moved for a nonsuit against the plaintiffs for failing to revise their complaints in accordance with the Requests to Revise.
On May 19, 1995 at a hearing on the Motions for Nonsuit the court declined to enter the nonsuit and, instead, gave the plaintiffs an additional 30 days to comply with the Requests to Revise. In Case Management Order Number Four dated June 5, 1995 this court ordered the plaintiffs to incorporate the revisions called for by the Requests to Revise, or state clearly the reasons for any noncompliance.
The plaintiffs filed another series of Revised Complaints on June 20, 1995. While these complaints did contain some revisions, they still did not comply with the Requests to Revise nor did they state any reasons for the noncompliance. On July 11, 1995 Deloitte and Lally moved to strike the June 20, 1995 Complaints. By its Memorandum of Decision Dated February 5, 1996, this court did strike almost all claims against Deloitte and Lally.
Much attorney time was devoted to the briefing and arguing in favor of and in opposition to the Motions to Strike. This was not surprising in light of the length of the June 20, 1995 Amended Complaints (over 200 pages) and the complexity of the legal issues involved, particularly concerning the CUSA allegations in the Amended Complaints. In addition, the undersigned devoted a large amount of time to reviewing the complaint as well as researching the legal issues raised by the parties.
In the February 5, 1996 Memorandum of Decision this court found that the Complaint of June 20, 1995 alleged the following facts concerning Deloitte and Lally:
Allegations as to Deloitte Touche and Robert Lally
 Deloitte is a national accounting firm which began providing accounting services to one or more of the Colonial Entities, including Colonial Constitution, in 1988. ¶¶ 48, 101. The services performed by Deloitte included an audit of the financial cash flow position of Constitution Limited Partnership done by Lally, begun in approximately December, 1989, which continued through the winter and spring of 1990. CT Page 5261-T ¶ 101.1. The fee for these services was grossly inflated and in reality represented a payoff of illegal finders fees for referring Deloitte clients to invest in at least Colonial Constitution Limited Partnership. ¶ 101.2. The illegal agreement to pay finder fees was conceived at a meeting in the back room of the "West Side Lobster House," a Waterbury restaurant, on September 11, 1989 between various representatives of Deloitte and Shuch, Googel and other Colonial representatives. ¶ 101.3 The agreement was then carried out in the fall and winter of 1989, as Deloitte invited its clients to Colonial presentations, which it sponsored in Waterbury and New Haven. ¶ 101.4. The Waterbury presentation took place on November 29, 1989 and was attended by at least fifty potential investors at the request of Deloitte. ¶ 101.5. As a result of the sales presentation sponsored by Deloitte in at least Waterbury and New Haven, many of those attending invested in the Colonial Constitution Limited Partnership and Deloitte managing partner for Waterbury, Jack Pawcota, induced various people, named in the Complaint, to invest in Constitution and in other Colonial Limited Partnerships. ¶¶ 101.7, 101.8. The Complaint does not allege that Deloitte, Pawcota, or any other agent or employee of Deloitte induced anyone to invest in any other limited partnership which is the subject of a class action in which Deloitte or Lally is a party: Colonial Health care (Christofaro v. Colonial Health care), Colonial Southbury (Reilly v. Pinkus), Colonial Broadwater (Riggi v. Colonial Broadwater), Colonial Capital Center (Santarsiero v. Colonial Realty), or Colonial Mesa (Sticka v. Colonial Realty/USA Corp.).
 Deloitte possessed the marketing documents for the syndication of Colonial Constitution Limited Partnership including the PPMs and the Glossy Brochures by November 29, 1989 and used these documents to "promote this venture in order to obtain accounting work from Colonial." ¶ 102. In addition, Deloitte offered information to its clients about purchasing interests in Colonial Limited Partnerships, for example, by conducting sales presentations in the fall and winter of 1989 and 1990. ¶ 103. The sales presentations were attended by over 100 people and were a quid pro quo for performing work at inflated prices. ¶¶ 103.1, 103.2.
 In October through December, 1989, Deloitte partner, Lally, approached Googel, Shuch and Sisti and convinced them CT Page 5261-U to have a report prepared on the cash flow of all Colonial properties. Lally estimated the fee to be $50,000, but in fact, Deloitte was paid over $800,000 on a charge of approximately $1,000,000. ¶¶ 104, 104.1, 014.2. [104.2] From its preparation of the cash flow report, Deloitte knew or should have known that Colonial was insolvent. In March of 1990 Lally brought Googel and Shuch to New York to meet with a Deloitte partner, Roulac, to discuss insolvency issues. Despite this, Deloitte continued to promote its clients' investments in Colonial limited partnerships, including Constitution, not only encouraging new investment by such individuals as Herman Wolf and Laura Gilmore, but also the continuing payment of note obligations on Constitution and other limited partnerships. The "new investment" referred to in this section of the complaint implies investment in Colonial limited partnerships. A review of the Complaints in the nineteen class actions pending in this court, which are set forth in footnote two, indicates that no plaintiff is alleged to have purchased an interest in any Colonial Limited Partnership after December, 1989. ¶ 105.1. The Complaint does not contain any allegation that any specific purchaser was "encouraged" to purchase by Deloitte after March, 1990, notwithstanding Deloitte's Request to Revise seeking such specific allegation.
 Robert Lally managed the cash audit of all Colonial limited partnerships, attended management meetings of Colonial on a weekly basis from January through September, 1990, and participated in management decisions of Colonial. In May and June, 1990, knowing of the cash flow problems, the insolvency and imminent bankruptcy of Colonial, Lally participated in a plan by which Colonial would suspend payment to limited partners, except those in the unsold Constitution Limited Partnership in an attempt to keep the Ponzi scheme afloat. ¶¶ 105.2, 105.3. Knowing that investors would inquire about the cause of the failed dividends, Robert Lally, acting as a partner in Deloitte, on June 12, 1990, prepared questions and answers for the Colonial salesmen to give to investors including: Is Colonial in trouble?; Why am I not getting my dividend? The answers prepared by Lally were false and were known by him to be false at the time they were given. The questions and answers were communicated to limited partners after June 12, 1990. The limited partners, including those in Constitution, relied on the false information created by Lally to their detriment. ¶¶ 105.4, 105.5. CT Page 5261-V
 After the general allegation section above, Count XXV of the complaint, entitled, "Violation of CUSA 36-498," alleges that Deloitte materially assisted the Colonial Entities who offered or sold interest in Constitution. This assistance was provided in 1988, 1989 and 1990. "This assistance has been detailed in previous paragraphs." ¶ 511. Notwithstanding the foregoing allegations, the earliest conduct of Deloitte detailed in previous portions of the complaint commenced in November, 1989, and consisted of sponsoring Colonial presentations and inducing purchases in Constitution and various other limited partnerships which are not the subject of any class action which is the subject of the present Motion to Strike.
 Deloitte knew or should have known of the untruths or omissions in the document which Lally created because Deloitte had done a cash audit of Colonial and knew in June, 1990, that Constitution was insolvent, and that Colonial was insolvent. Deloitte further knew that the investors were being defrauded of their dividend payment, and that investors had outstanding note payments to make of millions of dollars, yet with this knowledge, on or about June 12, 1990, Deloitte, acting through Lally, made untrue statements of material facts and/or omissions to state material facts in that they prepared a document which was to be communicated to the investors falsely representing that Colonial would not go bankrupt, would survive, and that the investors would not loose their money. ¶ 512.1.
 Count XXVI of the Rota complaint, entitled "Violation of CUSA (as to Lally)" contains essentially the same allegations as Count XXV. Lally is not a defendant in the other five actions.
 Count XXXVIII, entitled "Common Law Fraud by Omission or Misrepresentation" alleges that in connection with the sale of (unspecified) limited partnership interests, Deloitte made material false representations which were untrue and were known to be untrue in order to induce the plaintiff to act, and the plaintiff did so act to his detriment. Other than the allegedly false questions and answers prepared by Lally in June, 1990, the complaint alleges no other misrepresentations or omissions by Deloitte. The latest purchase of a Colonial limited partnership interest by any investor allegedly CT Page 5261-W occurred in December, 1989.
Allegations of February 20, 1996 Complaints
In addition to their rather outrageous changes in the alleged dates of purchase from actual dates to theoretical dates as described above, the Complaints of February 20, 1996 contain major factual additions and changes not present in any of the previous complaints. For example, the June 20, 1995 Complaints alleged that Deloitte started performing services for Colonial in 1988, while the February 20, 1996 Complaints allege that Deloitte started performing services for Colonial in 1985. The former Complaints failed to identify any investors who had purchased an interest in any Colonial limited partnership based on the representations allegedly made by Lally in certain questions and answers he allegedly prepared for Colonial in June, 1990. This was not surprising in light of the fact that not one of the Complaints in the 19 existing class actions alleged that any representative plaintiff had purchased an interest in any Colonial limited partnership after December, 1989. The present Complaints allege that "Herman Wolf, John Wilson and Brian Kelley" were induced to purchase interests in Colonial Constitution, Cheshire and Gold by the fraudulent questions and answers." Rota ¶¶ 105.8.1; Santarsiero ¶¶ 96.8, 96.8.1. Those complaints still fail to explain how those individuals could have purchased limited partnership interests in reliance on questions and answers which did not exist until some six months after the last purchase of any limited partnership interest.
As a further example of the major changes in the present Complaints, in the June 20, 1995 complaints the only conduct of Deloitte or Lally identified occurred in November, 1989 and thereafter. The present Complaints allege: "Beginning in March 1985, Deloitte Touche and Mr. Lally were used as `professional references' in materials provided to investors and in statements made to investors `touting' Colonial limited partnerships, and induced investors to purchase interests in Broadwater, Capitol Center, Healthcare, Mesa, and Southbury. Rota ¶¶ 48.4, 103.1;Santarsiero ¶¶ 41.4, 94.1.
Ruling
It is not unusual for a plaintiff to change factual allegations in a complaint based on mistake or inadvertence. For example, a complaint may inadvertently allege that an accident CT Page 5261-X occurred on the wrong date or the incorrect street. In the face of Requests to Revise, several court ordered revisions and representations made by plaintiffs' counsel that the June 20, 1995 complaints would contain all the factual allegations that the plaintiffs could make, the changes in the present Complaints cannot be attributed to inadvertence. Such changes give rise to the unfortunate inference that the plaintiffs are treating the pleading process in these actions like a game.
Section 157 of the Practice Book allows pleading over after a prior complaint is stricken in order to avoid injustice.McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 528,590 A.2d 438, 445 (1991); Southport Manor Convalescent Ctr. v. Foley,216 Conn. 11, 15, 578 A.2d 646, 648 (1990). Thus, a complaint against the State of Connecticut, for example, may be fatally defective because it fails to allege that the State's conduct was the sole proximate cause of the plaintiff's injuries. If it is stricken, § 157 permits the plaintiff to file a new complaint to cure the defect.
Section 157 was not intended to allow a plaintiff to play games with the pleading process by filing an impermissibly vague complaint, ignoring requests to revise and court ordered revisions until after a complaint is stricken for vagueness and insufficient allegations. Allowing the plaintiffs to amend the Complaints in the manner they have done does not prevent injustice, it causes injustice to Deloitte and Lally.
Deloitte and Lally have been pointing out the deficiencies in the complaints in these actions since March, 1994. The court has afforded the plaintiffs a full opportunity to remedy those deficiencies and to state a cause of action against Deloitte and Lally in the June 20, 1995 complaints. The court has acted on Motions to Strike those Complaints as to Deloitte and Lally. For the reasons set forth above, the court finds that the February 20, 1996 Complaints as to Deloitte and Lally constitute an egregious abuse of the pleading process not intended by Practice Book § 157. Therefore, all allegations as to Deloitte and Lally in those Complaints are stricken and Judgments may enter in favor of Deloitte and Lally in accordance with the court's Memorandum of Decision of February 5, 1996.
By the court,
Aurigemma, J. CT Page 5261-Y