## LEVEY MILLER MARETZ *v.* 595 CORPORATE CIRCLE ET AL.
### (SC 16304)

Borden, Norcott, Katz, Sullivan and Vertefeuille, Js.*

Argued January 11—officially released September 18, 2001

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

*Edwin L. Doernberger,* for the appellant (plaintiff).

*James C. Graham,* for the appellees (defendants).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether, under General Statutes (Rev. to 1991) § 20-325a (b) (5),[1] a listing agreement for real property owned by a partnership that is signed by all of the general partners as agents of the partnership is rendered unenforceable because the partners were not "authorized to act on behalf of the [partnership] . . . by a written document executed in the manner provided for conveyances in [General Statutes (Rev. to 1991) §] 47-

---

[1] General Statutes (Rev. to 1991) § 20-325a (b) provides in relevant part: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall . . . (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."

Since 1991, § 20-325a has been amended several times. In 1994, it was amended by No. 94-240 of the 1994 Public Acts. Although the potential effect of Public Act 94-240 was an issue before the Appellate Court, as we indicate later in this opinion, under our view of the case, it is not necessary to consider that legislation.

All references herein to § 20-325a are to the 1991 revision, which was in effect at the time of the listing agreement in the present case.

5 . . . ."[2] Following our grant of certification to appeal,[3] the plaintiff, Levey Miller Maretz, appealed from the Appellate Court's judgment affirming the trial court's summary judgment rendered in favor of the defendants, 595 Corporate Circle, a Connecticut general partnership, and Charles E. Weber, Jr., and Alfred J. Secondino, Jr., its general partners. *Levey Miller Maretz* v. *595 Corporate Circle,* 56 Conn. App. 815, 825, 746 A.2d 803 (2000). We conclude that § 20-325a (b) (5) does not apply to the facts and circumstances of the present case. Accordingly, we reverse the judgment of the Appellate Court.

---

[2] General Statutes (Rev. to 1991) § 47-5 provides: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands.

"(b) In addition to the requirements of subsection (a), the execution of a deed or other conveyance of real property pursuant to a power of attorney shall be deemed sufficient if done in substantially the following form:

Name of Owner of Record
By: (Signature of Attorney-in-Fact) L.S.
Name of Signatory
His/Her Attorney-in-Fact

"(c) Nothing in subsection (b) precludes the use of any other legal form of execution of deed or other conveyance of real property."

[3] We granted the plaintiff's petition for certification to appeal limited to the following issues: (1) "Did the Appellate Court correctly determine that a real estate listing agreement was unenforceable under General Statutes (Rev. to 1991) § 20-325a on the ground that the signatures of the general partners of the partnership ownership of the property were not acknowledged and witnessed?" and (2) "Did the Appellate Court correctly determine that the amendments to General Statutes § 20-325a, enacted by No. 94-240 of the 1994 Public Acts, did not apply to real estate listing agreements signed prior to the effective date?" *Levey Miller Maretz* v. *595 Corporate Circle,* 253 Conn. 906, 906–907, 753 A.2d 940 (2000).

Because we conclude, under the first question, that § 20-325a (b) (5) did not apply to the general partners in the present case, we need not address the second certified issue.

The plaintiff, a licensed real estate brokerage firm, brought this action against the defendants for breach of a listing agreement regarding the sale or lease of certain real property located in Branford. The defendants answered the complaint and raised six special defenses, three of which claimed that the listing agreement did not comply with § 20-325a. The defendants moved for summary judgment, which the trial court granted. The Appellate Court affirmed the trial court's judgment. Id. This appeal followed.

The following facts are undisputed. The property involved is owned by 595 Corporate Circle, whose only general partners are Weber and Secondino. Id., 816. On April 23, 1991, the plaintiff entered into the listing agreement to sell or lease the property. Id., 817. The listing agreement: (1) identified "595 Corporate Circle" as the "[owner] of the property"; (2) identified the plaintiff as the exclusive agent to sell or lease the property; (3) referred to a certain exclusion contained in an attached letter "to Charles E. Weber, Jr., Partner";[4] (4) was signed by the plaintiff; and (5) was signed by Weber and Secondino on separate lines under each of which was the legend, "OWNER'S signature . . . ."[5]

---

[4] The attached letter, dated March 18, 1991, was from a prior listing agent to "Mr. Charles E. Weber, Jr., Partner," and concerned the same owner and property, namely, "595 Corporate Circle."

[5] The listing agreement provided as follows:

"Date: April 23, 1991

595 CORPORATE CIRCLE, owners of the property located at 595 East Main Street in Branford, Connecticut hereby appoints LEVEY MILLER MARETZ, REALTORS exclusive agent and grants AGENT the sole and exclusive right to SELL the property known as ORCHARD HILLS PLAZA.

This agreement shall remain in full force effective April 1, 1991 and until April 1, 1993, unless the property has been SOLD/LEASED or withdrawn from the market.

OWNER authorizes AGENT to quote a SALE PRICE of $8,500,000.

OWNER authorizes AGENT to quote a LAND LEASE of $750,000 absolute net annually.

'Notice: The amount of Real Estate Commissions is not fixed by law. They are set by each broker individually and may be negotiable between the seller and broker.'

The Appellate Court first noted that, under General Statutes (Rev. to 1991) § 34-46 (3),[6] the property, which was owned " 'in the partnership name,' " could " 'be conveyed only in the partnership name.' " Id., 819. The court stated: "The listing agreement does not reflect that anyone signed it on behalf of 595 Corporate Circle. Although the general partners signed the listing

---

OWNER agrees that whenever during the term of this agreement the Property shall have been SOLD or a customer procured, ready, able and willing to BUY the Property for the price as shown above or for any other price or upon such terms as may be agreed to by the OWNER, the OWNER will pay the AGENT a commission, as follows:

Sale of Property: Five (5%) percent of sales price.

Land Lease: Five (5%) percent of initial lease term paid annually.
        Two (2%) percent of optional renewal periods paid annually.

Exclusions: The only exclusions are listed on the attached addendum which is a letter dated March 18, 1991 from First Whitney, Inc. to Charles E. Weber, Jr., Partner.

OWNER agrees to pay AGENT reasonable legal fees for collection of any commissions that shall become due and payable under the terms and conditions of this agreement.

OWNER and AGENT agree that this agreement shall be binding upon their respective heirs, successors, assigns, executors, and administrators.

OWNER(S) hereby acknowledge(s) agreement to all the terms as set forth above. Receipt of a copy of this contract by the OWNER(S) is hereby acknowledged.

/s/ Stephen Miller
Listing Agent

Levey Miller Maretz
Authorized Agent

1308 Whalley Ave.
Street Address

New Haven, CT 06525
City    State    Zip

/s/ Charles Weber
OWNER'S signature

31 Business Park Rd.
OWNER'S Street Address

Branford, CT 06405
City    State    Zip

/s/ Alfred J. Secondino
OWNER'S signature
21 Rice Ridge Road
OWNER'S Street Address
Killingworth, CT 06417
City    State    Zip"

[6] General Statutes (Rev. to 1991) § 34-46 (3) provides: "Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name."

agreement, they could do so only as agents because they were not the owners of the property interest. Accordingly, for the listing agreement to be enforceable, it must be signed by 'an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5 . . . .' General Statutes (Rev. to 1991) § 20-325a (b) (5). The listing agreement does not reflect any authorization for Weber and Secondino to sign as agents for 595 Corporate Circle. Furthermore, it is undisputed that there is no document witnessed and acknowledged pursuant to § 47-5 authorizing Weber or Secondino to enter into the agreement on behalf of 595 Corporate Circle." *Levey Miller Maretz* v. *595 Corporate Circle*, supra, 56 Conn. App. 819–20. The Appellate Court therefore held "that the listing agreement [was] unenforceable because it was not in strict compliance with § 20-325a (b)." Id., 820.

The Appellate Court also reasoned that, "unless the general partners were authorized in accordance with § 20-325a (b) and § 47-5 to execute the [listing] agreement on behalf of 595 Corporate Circle, the strict provisions of § 20-325a (b) were not met, and the partnership was not bound by the agreement." Id., 822. The court "conclude[d] that the listing agreement in this case was signed by the general partners in their individual capacit[ies] and not on behalf of 595 Corporate Circle." Id. Therefore, the court determined that because the agreement was not signed by the owner of the property, "the listing agreement was unenforceable under § 20-325a (b) . . . ." Id.

Thus, there were two related strands to the reasoning of the Appellate Court. First, it reasoned that, because Weber and Secondino could sign only as agents of the partnership, their signatures were ineffective to bind the owner of the property because: (1) the listing agreement did "not reflect any authorization for Weber

and Secondino to sign as agents for 595 Corporate Circle"; and (2) there was "no document witnessed and acknowledged pursuant to § 47-5 authorizing Weber or Secondino to enter into the agreement on behalf of 595 Corporate Circle." Id., 820. Second, it reasoned that because the general partners were not authorized to sign the agreement by such a deed-like document, "the listing agreement in this case was signed by the general partners in their individual capacit[ies] . . . ." Id., 822.

The plaintiff claims that the Appellate Court improperly concluded that the listing agreement in the present case was unenforceable under § 20-325a (b) (5) because the agency authority of Weber and Secondino was not evidenced by a deed-like document, as required by §§ 20-325a (b) (5) and 47-5. The defendants claim, to the contrary, that, under § 20-325a (b) (5), unless the signatures of Weber and Secondino were authorized by such a document—which they admittedly were not— their signatures were ineffective to constitute compliance with § 20-325a. We agree with the plaintiff.

We first address a subsidiary issue that, although not raised by the defendants in their response to the plaintiff's arguments before this court, was nonetheless injected into the case by the reasoning of the Appellate Court, namely, the conclusion of that court that "the listing agreement in this case was signed by the general partners in their individual capacit[ies] . . . ." Id. We address this issue because it undermines the factual predicate of the first certified issue in the case, namely: "Did the Appellate Court correctly determine that a real estate listing agreement was unenforceable under General Statutes (Rev. to 1991) § 20-325a on the ground that the signatures of the general partners of the partnership ownership of the property were not acknowledged and witnessed?" *Levey Miller Maretz* v. *595 Corporate Circle*, 253 Conn. 906, 753 A.2d 940 (2000).

The record conclusively demonstrates that, contrary to the conclusion of the Appellate Court, Weber and Secondino signed the listing agreement, not as individuals, but as agents of the owner of the property, namely, the partnership of which they were the sole general partners. First, the listing agreement itself cannot rationally be viewed any other way. The very first paragraph of the listing agreement provides: "595 CORPORATE CIRCLE, [*owner*] of the property located at 595 East Main Street in Branford, Connecticut hereby appoints LEVEY MILLER MARETZ, REALTORS exclusive agent and grants AGENT the sole and exclusive right to SELL the property known as ORCHARD HILLS PLAZA." (Emphasis added.) On the first page of the listing agreement the word "OWNER" appears four more times, each time obviously referring to the entity previously referred to as 595 Corporate Circle. Furthermore, on that first page the following paragraph appears: "Exclusions: The only exclusions are listed on the attached addendum which is a letter dated March 18, 1991 from First Whitney, Inc. *to Charles E. Weber, Jr., Partner.*" (Emphasis added.) The attached addendum, which also is part of the record in this case, is a letter from a prior listing agent, dated March 18, 1991, regarding "595 Corporate Circle," addressed to "*Mr. Charles E. Weber, Jr., Partner,*" referring to "the listing between 595 Corporate Circle *as owner* and First Whitney Realty as broker . . . ." (Emphasis added.) Finally, in the listing agreement, underneath the signatures of both Weber and Secondino is the following legend: "OWNER'S signature."[7] Indeed, because the documents specifically and repeatedly identify 595 Corporate Circle as the owner, it would have been nonsensical for them *as individuals* to be listing property for sale that

---

[7] It is true that, although Weber is referred to as a partner, nowhere in these documents is Secondino specifically referred to as a partner. The plaintiff has never suggested, however, that they somehow stand in different relationships to the owner—namely, 595 Corporate Circle.

they did not own *as individuals.* Thus, the only rational inference is that they were doing so as partners of the partnership that owned the property.

Second, this record makes clear that, throughout the case, the defendants repeatedly and emphatically have asserted that to be the case. In their summary judgment papers in the trial court, the defendants stated: "Since one purpose, if not the only purpose, of the 595 Partnership was ownership and development of the Property, Messrs. Weber and Secondino were, necessarily, *acting in their capacities as agents of 595 Partnership* when they signed the Agreement." (Emphasis in original.) Also, in their brief in this court, they have repeated that assertion essentially verbatim, even with much of the same italicization. Indeed, it is precisely this factual matrix—that Weber and Secondino were acting as agents of the partnership that was the owner of the property—that is the basis of the defendants' legal claim that such an agency is required by § 20-325a (b) (5) to be evidenced by a deed-like document.

Thus, legally, Weber and Secondino could not be personally liable on the listing agreement, and only 595 Corporate Circle could be liable, because they were acting as agents for a disclosed principal. *Rich-Taubman Associates* v. *Commissioner of Revenue Services,* 236 Conn. 613, 619, 674 A.2d 805 (1996) (agent not liable if principal disclosed); 2 Restatement (Second), Agency § 320 (1958) ("[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract").

We turn, therefore, to the merits of the first certified question: "Did the Appellate Court correctly determine that a real estate listing agreement was unenforceable under General Statutes (Rev. to 1991) § 20-325a on the ground that the signatures of the general partners of

the partnership ownership of the property were not acknowledged and witnessed?" *Levey Miller Maretz* v. *595 Corporate Circle*, supra, 253 Conn. 906. We conclude that where, as in the present case, the owner of the property is an entity that can act only through its agents, the requirement of § 20-325a (b) (5) that an agent signatory to a listing agreement be "authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5," does not apply. Put another way, that requirement applies where the owner may act either individually or through an agent, and chooses to act through an agent.

We begin with the undisputed proposition that, in signing the listing agreement as agents of 595 Corporate Circle, Weber and Secondino were, as a matter of partnership law, authorized to bind the owner. Under General Statutes (Rev. to 1991) § 34-47 (1),[8] they had the authority to sign the listing agreement and bind 595 Corporate Circle to it, without an additional document that had been witnessed and acknowledged pursuant to § 47-5.

We previously have stated that the requirements of § 20-325a (b) are mandatory rather than permissive, and that the statute must be strictly construed. *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 520, 590 A.2d 438 (1991); *Thornton Real Estate, Inc.* v. *Lobdell*, 184 Conn. 228, 230, 439 A.2d 946 (1981); see also *Real Estate Auctions, Inc.* v. *Senie*, 28 Conn. App. 563, 568,

---

[8] General Statutes (Rev. to 1991) § 34-47 (1) provides: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

611 A.2d 452 (1992); *Rostenberg-Doern Co.* v. *Weiner*, 17 Conn. App. 294, 305, 552 A.2d 827 (1989).

More recently, however, we have articulated a somewhat different view of the statute. In *M.R. Wachob Co.* v. *MBM Partnership*, 232 Conn. 645, 658–63, 656 A.2d 1036 (1995), we reviewed the history of § 20-325a, including several legislative responses to our judicial constructions of the statute. In so doing, we stated: "In 1984 . . . the legislature amended the statute, partly in response to the decision of this court in *Thornton Real Estate, Inc.* v. *Lobdell*, [supra, 184 Conn. 228]. In *Thornton Real Estate, Inc.*, this court had held unenforceable a listing agreement signed by an agent of the owner, rather than by the owner himself. Reasoning that the statute required the signatures of 'the parties thereto,' this court had concluded that the real estate broker could not recover his commission because a 'broker who does not follow the mandate of the statute does so at his peril.' Id., 230–31.

"As a result of this court's decision in *Thornton Real Estate, Inc.*, the legislature changed the language of the statute to require only that the listing agreement 'be signed by the seller or his agent . . . and by the real estate broker or his authorized agent.' General Statutes (Rev. to 1985) § 20-325a (b). The legislature made this change in order to 'increase the number of persons who may legally sign a real estate listing agreement. . . . [T]he problem with our current law is that courts have interpreted it so literally, that any listing agreement that doesn't contain the personal signatures of all parties may be ruled invalid . . . .' 27 S. Proc., Pt. 4, 1984 Sess., pp. 1413–14, remarks of Senator Wayne A. Baker; see Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1984 Sess., pp. 63–64, remarks of Timothy Calnen, Connecticut association of realtors." *M.R. Wachob Co.* v. *MBM Partnership*, supra, 232 Conn. 660.

We also stated that "the legislative history of the 1984 amendment reveals that the legislature has attempted to avoid narrow judicial constructions of the language of the statute. Indeed, the legislature altered the language of the statute in direct response to this court's decision in *Thornton Real Estate, Inc.* v. *Lobdell*, supra, 184 Conn. 228, in which this court had held unenforceable a listing agreement that failed to satisfy the literal language of the statute. In so doing, the legislature clearly expressed its position that it did not intend the literal language of the statute necessarily to erect barriers to the recovery of otherwise valid real estate commissions. Finally, the legislature has stated repeatedly that the statutory requirements for listing agreements are designed to simplify and clarify the process of hiring real estate brokers." *M.R. Wachob Co.* v. *MBM Partnership*, supra, 232 Conn. 661–62.

This recent interpretation, elucidating the purposes and history of § 20-325a (b), is significant for at least two reasons. First, it reminds us that, despite our judicial insistence on a strict interpretation of the requirements of the statute, "the legislature has attempted to avoid narrow judicial constructions of the language of the statute." Id., 661. Second, it emphasizes that one purpose of the statute is to simplify and clarify the process of entering into a listing agreement.

We need not decide in this case whether we should continue to interpret § 20-325a strictly, as suggested by the earlier cases, or more practically, as suggested by *M.R. Wachob Co.* Under either approach, we conclude that the signatures of Weber and Secondino on the listing agreement complied with the statute.[9]

---

[9] To the extent that the certified question suggests that § 20-325a (b) (5) might require, not only that an agent's authority be granted by a deed-like document, but that the agent's signature on the listing agreement itself be witnessed by two witnesses and acknowledged, we reject such a suggestion. Section 20-325a (b) (5) simply states that the agent be "authorized . . . by a written document" executed with the formalities of a deed of conveyance. It does not say that those formalities must also appear on the listing

It is true that, read literally, the statute could be understood to require that, even when both general partners of a partnership sign a listing agreement as agents of the partnership, their agency must be authorized by a deed-like document. We decline, however, to engage in such a literal interpretation. The evident principal purpose of § 20-325a (b) (5), requiring the formalities of a deed for the authority of an agent to act for the principal in signing a listing agreement, is to impress upon the principal the need for caution and prudence in granting such authority. That purpose simply does not apply where the principal can act *only* through its agents. Furthermore, such a literal interpretation would, in our view, lead to bizarre results. It would mean, for example, that if the president of a corporation signed a listing agreement on behalf of the corporation, in order for the agreement to bind the principal, the corporation would have had to have executed a separate document, witnessed and acknowledged, giving the president the authority to do so. We ordinarily decline to interpret statutes so as to yield bizarre results; *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 778, 739 A.2d 238 (1999); and we see no reason to depart from that commonsensical practice in the present case. Thus, we read § 20-325a (b) (5) as intended to apply where the owner has an option to act either through an agent or individually, and the owner chooses to act through an agent. The statute does not apply, however, where, as in the present case, the owner, as an entity, can act only through its agents.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand

agreement itself. To impose such a requirement would be to go beyond even a strict construction of the statute, and to add a requirement that neither its language nor its purpose contemplates.

the case to that court for further proceedings according to law.

In this opinion NORCOTT and KATZ, Js., concurred.

VERTEFEUILLE, J., with whom SULLIVAN, J., joins, concurring. I agree with and join the majority's conclusion that under General Statutes (Rev. to 1991) § 34-47,[1] a general partner of a partnership can bind the partnership to a listing agreement without an additional document that is acknowledged and witnessed pursuant to General Statutes (Rev. to 1991) § 47-5.[2] I therefore agree with the majority that the Appellate Court improperly affirmed the decision of the trial court to grant the defendants' motion for summary judgment on the ground that the listing agreement in this case did not satisfy General Statutes (Rev. to 1991) § 20-325a (b) (5).[3] I disagree, however, with the majority's decision

---

[1] General Statutes (Rev. to 1991) § 34-47 (1) provides: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

Section 34-47 was repealed by No. 95-341, § 57, of the 1995 Public Acts, effective July 1, 1997, however, it was in effect at the time that the listing agreement in the present case was executed in 1991. See General Statutes § 1-1 (t) and (u).

[2] General Statutes (Rev. to 1991) § 47-5 (a) provides: "All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands."

[3] General Statutes (Rev. to 1991) § 20-325a provides in relevant part: "(a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state . . . to recover any commission, compensation

to address an issue that it maintains is "subsidiary" to the dispositive issue before us, namely, the Appellate Court's conclusion that "the listing agreement in this case was signed by the general partners in their individual capacit[ies] . . . ." *Levey Miller Maretz* v. *595 Corporate Circle*, 56 Conn. App. 815, 822, 746 A.2d 803 (2000). I would not reach beyond the certified question before us to address this issue.[4] There are several reasons why I would not reach this issue.

First, as the majority correctly acknowledges, the defendants never made the argument on appeal that the individual defendants, Charles E. Weber, Jr., and Alfred J. Secondino, Jr., the general partners of the named defendant partnership, 595 Corporate Circle, had signed the listing agreement in their individual capacities. The majority addresses this issue despite its not having been raised by the parties. Because we decide cases based upon the issues that are briefed and argued before this court and, generally, do not independently

or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action . . . as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent. . . ."

[1] The first of two certified questions was limited to the following: "Did the Appellate Court correctly determine that a real estate listing agreement was unenforceable under General Statutes (Rev. to 1991) § 20-325a on the ground that the signatures of the general partners of the partnership ownership of the property were not acknowledged and witnessed?" *Levey Miller Maretz* v. *595 Corporate Circle*, 253 Conn. 906, 753 A.2d 940 (2000).

reach for issues beyond that scope, we should not reach the issue. See, e.g., *King* v. *Sultar*, 253 Conn. 429, 444 n.6, 754 A.2d 782 (2000); *State* v. *Colvin*, 241 Conn. 650, 661 n.8, 697 A.2d 1122 (1997); *Aetna Life & Casualty Co.* v. *Union Trust Co.*, 230 Conn. 779, 788 n.5, 646 A.2d 799 (1994).

Second, I disagree with the majority's contention that we must reach the issue because it was "injected into the case by the reasoning of the Appellate Court" and, therefore, "undermines the factual predicate of the first certified issue in the case . . . ." See footnote 4 of this concurrence. The Appellate Court's conclusion that "the listing agreement in this case was signed by the general partners in their individual capacit[ies]"; *Levey Miller Maretz* v. *595 Corporate Circle*, supra, 56 Conn. App. 822; in part because "[t]he listing agreement does not reflect that anyone signed it on behalf of 595 Corporate Circle"; id., 819–20; was not essential to its decision affirming the judgment of the trial court. The crux of the Appellate Court's decision was that Weber and Secondino could not, pursuant to § 20-325 (b) (5), bind the partnership to the listing agreement without an additional document that had been acknowledged and witnessed pursuant to § 47-5. Although I agree with the majority that this conclusion is incorrect, it is clear to me that we can resolve the question of law before us without deciding, as the Appellate Court did, the capacity in which the partners signed the listing agreement. See id., 821–22.

Finally, by resolving the issue of whether Weber and Secondino signed the listing agreement in their individual capacities, *a question of fact*, the majority trespasses upon the province of the trial court by engaging in fact finding.[5] "It is the function of the trial court, not

---

[5] It appears to me that the majority not only exceeds its appropriate appellate function by reaching this factual issue, but its findings are antithetical to both the findings of the trial court and the stipulation made by the parties. I note that the trial court stated the following in its memorandum

this court, to find facts." *State* v. *Lafferty*, 189 Conn. 360, 363, 456 A.2d 272 (1983); *State* v. *Tate*, 256 Conn. 262, 287–88 n.17, 773 A.2d 308 (2001); see also *Miller* v. *Kirshner*, 225 Conn. 185, 199, 621 A.2d 1326 (1993).

I concur with the majority's conclusion that a general partner of a partnership can bind the partnership to a listing agreement without an additional document that is acknowledged and witnessed pursuant to § 47-5. I would reverse the judgment of the Appellate Court and remand the case to the trial court for further proceedings without reaching any other issue.

of decision on the defendants' motion for summary judgment: "The court finds, and the parties agree, that there are no genuine issues of material fact. For [the] purposes of this motion, the parties stipulate that there are no genuine issues of material fact with respect to the listing agreement. Both parties agree that the listing agreement was signed by [the plaintiff], Weber and Secondino, *but that no signature appears on the listing agreement on behalf of 595 [Corporate Circle].* Additionally, there is no dispute that Weber and Secondino have not executed any separate writing in accordance with . . . § 47-5, which would expressly evidence their authority to act as agents on behalf of the partnership. *The only issue to be determined is one of law, whether the listing agreement, on its face, satisfies the applicable statutory requirement that listing agreements be signed by the 'owner' of the subject property in order to be enforceable.*" (Emphasis added.)

